GARY M. RESTAINO
United States Attorney
District of Arizona
SARAH B. HOUSTON
Arizona State Bar No. 026691
FRANCES M. KREAMER HOPE
Assistant U.S. Attorney
Arizona State Bar No. 025608
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
sarah.houston@usdoj.gov
frances.kreamer.hope@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-22-01661-TUC-SHR (LCK) |
| Plaintiff, | |
| vs. | TRIAL BRIEF |
| Jorge Oliverio Moran-Can, | |
| Defendant. | |

The United States of America, by and through its counsel undersigned, files its trial memorandum.

I.     **STATEMENT OF FACTS**

The defendant, Jorge Oliverio Moran-Can, is charged via superseding indictment[1] with (1) assault on a federal officer – bodily injury, and (2) assault on a federal officer – physical contact. (ECF Doc. 26.)

---

[1] He was also charged will Illegal Entry, but that charge was dismissed by the government.

On July 3, 2023, the defendant, a Guatemalan citizen, illegally entered the United States. He was dressed in camouflage clothing and was traveling north on a trail that went along the ridge of a mountain near the international boundary.

When the victim, United States Border Patrol Agent B.G. encountered the defendant, the defendant forcefully and intentionally pushed Agent B.G. down a rocky, steep incline. As a result, both the defendant and Agent B.G. tumbled down the steep incline. Agent B.G. attempted to go into a sprawl in order to slow or stop their fall. The defendant continued to struggle with Agent B.G. and they both continued to slide down the incline with the defendant on top of the agent. Eventually, Agent B.G. managed to wrap his legs around the defendant and the defendant allowed himself to be handcuffed. Afterwards, Agent B.G. noted that his hip and leg were scraped and bruised. Agent B.G. and the defendant were the only ones present during the assault. No one else witnessed it.

## II. STIPULATIONS

None. However, the defense has agreed that they will not mention police brutality or put forth a self-defense claim. (Doc. 79.)

## III. LEGAL ISSUES

### A. Arguments Concerning Defendant's Intent

Violation of § 111 is a general intent crime in the Ninth Circuit. *United States v. Jim*, 865 F.2d 211, 215 (9th Cir. 1989). Among other things, this means that § 111(b) does not require an intent to cause the bodily injury. *United States v. Garcia-Camacho*, 122 F.3d 1265, 1269 (9th Cir. 1997).

### B. Cross-Examination of Victim Regarding Motive/Bias

The Confrontation Clause of the U.S. Constitution guarantees a defendant the right to cross-examine the government's witnesses. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). This includes an inquiry into a witness's potential bias or motivation. *Id.* at 678-79. However, this inquiry in not limitless. "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination

based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679. "The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).

Here, if the defendant's cross-examination of the victim becomes harassing, repetitive, or confuses the issues, the government will ask the Court to appropriately limit the inappropriate cross-examination.

### C.   Confusion of the Issues – Policy Compliance

In criminal trials, testimony about law enforcement standards and policies has been ruled inadmissible because it is irrelevant. For example, In *United States v. Rouco*, the First Circuit held that the district court properly excluded testimony about the victim agent's compliance with arrest procedures.[2] 765 F.2d 983, 995 (1st Cir. 1985). Specifically, the precluded testimony concerned whether the deceased agent acted in a manner that fell below professional standards of police conduct and thus increased the risk that the defendant would harm the agent. *Id.* The district court properly precluded the testimony because (1) the professional standard for arrest was irrelevant; (2) the concept that the defendant may have been confused when the undercover agent attempted to arrest him "would be valueless" because that was "nothing beyond the understanding and experience of the average citizen," and (3) it would mislead the jury by implying that the defendant's criminal responsibility for the murder was to be contingent upon the agent's conformity to the arrest procedure or lack of negligence. *Id.*

---

[2] The defendant was charged with murdering an undercover ATF agent when the agent attempted to arrest the defendant.

The government will object if the defendant's arguments or questions may mislead the jury into believing that the defendant's culpability is related to or reliant on the victim's compliance with policies and procedures. Such argument is properly precluded pursuant to Rule 403 of the Federal Rules of Criminal Procedure.

## IV. EVIDENTIARY ISSUES

### A. Agent Daniel Bennett's Testimony

Agent Bennett has been subpoenaed by the defense to testify at trial. Agent Bennett did not witness the assault. The defendant made statements to Agent Bennett before he was read his *Miranda* rights, but the government has self-suppressed those. Agent Bennett attempted to interview the defendant later, but the defendant invoked his right to remain silent and nothing else was said. Given Agent Bennett's limited involvement, most of which is inadmissible or irrelevant, it is unknown what relevant testimony he could provide. The government has sought clarification from defense counsel, but defense counsel indicated that Agent Bennett's testimony would depend on what transpired at trial.

If Agent Bennett is called as a defense witness, it may be necessary to have the defense provide a proffer outside the presence of the jury to ensure that the scope of the testimony is legally permissible and appropriate.

### B. The Imaginary Chokehold

An attorney cannot pursue lines of inquiry absent a good faith basis. *See United States v. Beck*, 625 F.3d 410, 418 (7th Cir. 2010) ("No attorney may ask a question if he doesn't have a good faith basis to ask it; that is, attorneys cannot take a shot-in-the-dark approach to their questions."); *United States v. Concepcion*, 983 F.2d 39, 391 (2d Cir. 1992) ("The trial court may, in its discretion, preclude questions for which the questioner cannot show a good faith basis."). Absent an offer of proof or other justifiable basis by the defendant that is more than mere speculation, inquiry or testimony into purely speculative matters should be precluded.

In multiple pleadings and during both evidentiary hearings in this case, defense

counsel repeatedly asserts that the defendant was in a chokehold. Defense counsel has failed to put forth a good faith factual basis for arguing that the victim used a chokehold on the defendant after the assault.

In an attempt to shoehorn this idea into trial without having to provide any facts or other evidence, they have put forth multiple expert witnesses who opine that the victim is lying. These have all been addressed in various motions that the Court will decide prior to trial. The government will object to any attempt by the defendant to insert his story into evidence through other witnesses. Such testimony would be inadmissible hearsay.

### C.     **Defendant's Use of Force Arguments**

Pursuant to USBP's own determination and policies, there was no reportable use of force against the defendant in this case.

In his report, Agent B.G. described how he wrapped his legs around the defendant. He explained that he had been taking Brazilian jiu-jitsu (BJJ) classes. But Agent B.G. clarified that he did not use a jiu-jitsu hold or restrict the defendant's airway or blood flow to his head:

> The way I wrapped my leg around MORAN, although somewhat similar to a triangle choke in BJJ, was not a chokehold and did not restrict his airway or blood flow to the head. To complete a triangle choke would have required me to lock my right ankle inside my left knee and preferably turn partially perpendicular to MORAN, neither of which I did. During BJJ training I have used triangle chokes dozens of times and have had them used against me dozens of times as well and am very familiar with what is a choke and what is not.

(Bates no. 28, previously filed at ECF Doc. 38, Exhibit A.)

At a preliminary hearing on July 11, 2022, before Magistrate Judge Aguilera, Agent B.G. testified and was cross-examined by Ms. Arce for the defendant. Ms. Arce cross-examined Agent B.G. about physical contact with the defendant:

> Q. And you also hit [the defendant] in the knee with your baton?
> A. I did not.
> Q. And you punched his face?
> A. I did not.

(ECF Doc. 16, p. 24.) Judge Aguilera found there was probable cause.

The victim testified again during a suppression hearing on January 11, 2023. Defense counsel asked if he put the defendant in a chokehold and Agent B.G. unequivocally stated, "I did not." (ECF Doc. 63, p. 40.).

After Agent B.G. reached other agents, he reported what happened to his supervisor, Agent Bennett. His supervisor concluded in his report that "none of the agent's actions are considered reportable Use of Force." This was because the agent "did not utilize any strikes, kinetic impact, or less-lethal devices."

Thus, there is no evidence, beyond defense speculation, that reportable use of force occurred. Whether force was used is also irrelevant since it would have occurred only after the defendant assaulted the victim.

## VI.   CONCLUSION

This brief is offered to acquaint the Court with factual and legal issues that may arise at trial. The United States requests that the Court grant it leave to submit additional information should other issues arise.

Respectfully submitted this 3rd day of April, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Sarah B. Houston*
*s/Frances M. Kreamer Hope*
SARAH B. HOUSTON
FRANCES M. KREAMER HOPE
Assistant U.S. Attorneys

Copy of the foregoing served electronically
or by other means this this 3rd day of April, 2023, to:

All ECF Participants